AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
Eastern District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br>Jermaine Reynolds<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

    14-85 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  From on or about June 1, 2012, through the present  in the parish of _____Jefferson_____  in the

____Eastern____ District of ____Louisiana____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(b)(1)(A) | Conspiracy to distribute 1 kilogram or more of heroin |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

 

                /s/Andrew P. Roccaforte
                *Complainant's signature*

       Andrew P. Roccaforte, Task Force Officer, DEA
               *Printed name and title*

Sworn to before me and signed in my presence.

Date:    7/1/14

                *Judge's signature*

City and state:    New Orleans, Louisiana

   Honorable Michael B. North, U.S. Magistrate Judge
               *Printed name and title*

### A F F I D A V I T

BEFORE ME, the undersigned authority, personally came and appeared Andrew P. Roccaforte of the Drug Enforcement Administration ("DEA"), United States Department of Justice, who, after being duly sworn, deposed and stated the following information, which he acknowledges as true to the best of his knowledge and belief:

1.      I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), United States Department of Justice, currently assigned to the New Orleans Field Division ("NOFD") of DEA, High Intensity Drug Trafficking Area ("HIDTA").  I have been employed as a DEA Task Force Officer for over two years, having worked for twenty-one years (21) as a Police Officer in the New Orleans Police Department, including over fifteen years as a narcotics detective.  I have participated in numerous investigations involving drug trafficking violations, including, but not limited to, the distribution, importation, manufacturing, and possession with the intent to distribute illegal controlled substances, and conspiracy to commit the same, as well as the use of communication facilities, such as telephones, digital telephone pagers, and other like facilities, to facilitate drug law violations.

2.      As a result of my training and experience as a DEA Task Force Officer, I am familiar with federal criminal laws relating to drug trafficking.  I know that it is a violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A) for a person to conspire to distribute or possess with intent to distribute one kilogram or more of heroin.

3.      I submit this affidavit in support of a criminal complaint for **JERMAINE REYNOLDS**, BM 2/3/1976, because I believe that probable cause exists to arrest **REYNOLDS** for the commission of one or more federal criminal offenses based upon the following facts that I

have learned from my own personal investigation of this matter, as well as from the following reliable sources:

  a.    Oral and written reports about this and other investigations that your affiant has received from members of DEA and the New Orleans Police Department ("NOPD");

  b.    Physical surveillance conducted by DEA and NOPD that has been reported to your affiant directly or indirectly;

  c.    Public and subpoenaed records;

  d.    Review of pen register and trap and trace information, telephone call records, and subscriber information;

  e.    Monitored and recorded conversations and text messages obtained through court-authorized wire intercepts of target telephones;

  f.    Interviews of cooperating sources whose information has been corroborated by this investigation; and

  g.    Voluntary admissions by **REYNOLDS**.

4.    This affidavit is submitted for the limited purpose of securing a criminal complaint, and therefore your affiant has not set forth each and every fact known to him concerning this investigation.  Your affiant has included what are believed to be facts sufficient to establish probable cause for the complaint sought.  Your affiant has also not disclosed the identities of **REYNOLDS'** criminal associates mentioned within this affidavit in order not to compromise an ongoing investigation.

5.    After conducting a series of court-authorized wire intercepts on local New Orleans heroin dealers, DEA agents identified DEFENDANT A as a Houston-based heroin

trafficker who was distributing multiple kilograms of heroin at a time to, and receiving bulk currency drug debt payments from, two high-level New Orleans area heroin wholesalers, using heroin and currency couriers.  DEA conducted lawful searches of electronic communications among DEFENDANT A, a known courier for DEFENDANT A, and their two New Orleans wholesale customers and secured Title III wire intercepts on cellular phones used by DEFENDANT A to orchestrate his trafficking and money laundering activities.

6.     In March 2014, during the court-authorized monitoring of DEFENDANT A's phone communications, agents intercepted numerous calls between **REYNOLDS**, identified as a drug and bulk currency courier, and DEFENDANT A during which DEFENDANT A coordinated the delivery of kilogram quantities of heroin from **REYNOLDS** to one of his two New Orleans area customers, and also coordinated the delivery of currency from the customer to **REYNOLDS** and ultimately back to DEFENDANT A.

7.     In a series of communications intercepted on April 3, 2014, between DEFENDANT A and **REYNOLDS**, and between DEFENDANT A and the known heroin customer, DEFENDANT A arranged to have **REYNOLDS** meet with the customer in order to collect $35,000.00 for a heroin debt.  After the meeting, **REYNOLDS** contacted DEFENDANT A to acknowledge receipt of the customer's payment, but reported that he had received only $20,000.00.

8.     Subsequent review of subpoenaed bank account records showed that, soon after these events, **REYNOLDS** conducted financial transactions to deliver the $20,000.00 proceeds to DEFENDANT A through a "front" business operated by DEFENDANT A in Houston, Texas.  On April 5, 2014, **REYNOLDS** deposited $20,000.00 cash into his own personal bank account at Keesler Federal Credit Union in Long Beach, Mississippi.  At the same time, **REYNOLDS**

purchased a cashier's check at the bank for $20,000.00 made payable to the name of "front" business operated by DEFENDANT A in Houston.  **REYNOLDS** also endorsed the back of the cashier's check.  On April 7, 2014, REYNOLDS deposited the $20,000.00 cashier's check into a Wells Fargo bank account in the name of "front" business operated by DEFENDANT A in Houston.  Based upon your affiant's experience and this investigation, your affiant believes that these transactions were used as a means to transfer to DEFENDANT A the drug debt payment made by DEFENDANT A's customer to **REYNOLDS**, while disguising the true source and nature of the payment.

9.      On July 1, 2014, DEA Gulfport agents prepared to execute a search warrant on **REYNOLDS**' residence located at 8 Thrivent Lane in Long Beach, Mississippi.  During pre-warrant surveillance, agents located **REYNOLDS** and detained him.  **REYNOLDS** was advised of the nature of the investigation and his rights per *Miranda*, and **REYNOLDS** indicated that he understood those rights but was willing to cooperate and answer questions regarding the investigation.  **REYNOLDS** also signed a DEA Advice of Rights form.

10.     **REYNOLDS** admitted that, since at least March 2014, he had been acting as a kilogram-quantity heroin and bulk currency courier for DEFENDANT A.  He stated that on three occasions, he had made trips to a known common carrier in Kenner, Louisiana, to pick up a shipping box with a container inside containing approximately one kilogram of heroin, and **REYNOLDS** then delivered the package to one of DEFENDANT A's heroin customers in the New Orleans area.  The known customer then handed **REYNOLDS** approximately $35,000.00 U.S. currency, intended as payment for half of the $70,000.00 owed to DEFENDANT A for the kilogram of heroin.  **REYNOLDS** would then arrange to meet up with the customer

4

approximately two weeks later to collect the remaining $35,000.00 owed for the heroin. **REYNOLDS** transmitted the payments that he received back to DEFENDANT A in Houston.

11.    Based upon the above information, I submit that probable cause exists to conclude that **REYNOLDS**, beginning at a time unknown but before June 1, 2012, and continuing to the present, did conspire with DEFENDANT A and others to distribute heroin in the Eastern District of Louisiana, in violation of Title 21, United States Code, Sections 846 and 841(a)(1)(B).


/s/ Andrew Roccaforte
Andrew Roccaforte
Task Force Officer
Drug Enforcement Administration


Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.


Sworn to and subscribed before me
this 1st day of July, 2014, at 5:10 p.m.,
New Orleans, Louisiana.

HONORABLE MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

5